Paul E. MERRELL, Plaintiff,

v.

Lee THOMAS,[1] Defendant,

and

Ciba-Geigy Corporation, Dow Chemical Company, Velsicol Chemical Corporation, National Agricultural Chemicals Association and Oregonians For Food & Shelter, Inc., Defendant-Intervenors.

United States District Court,
D. Oregon.

May 15, 1985.

---

1. Lee Thomas is substituted for William D. Ruckelshaus as the Administrator of the EPA pursuant to Fed.R.Civ.P. 25(d).

Ralph A. Bradely, Bradely & Gordon, Eugene, Or., for plaintiff.

Dorothy R. Burakreis, Richard W. Rodriguez, Elizabeth A. Peterson, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., Thomas C. Lee, Asst. U.S. Atty., Portland, Or., for defendant.

Kenneth W. Weinstein, Stanley W. Landfair, McKenna, Conner & Cuneo, Washington, D.C., for Ciba-Geigy Corp., Dow Chemical Co., Velsicol Chemical Corp., Nat. Agr. Chemicals Ass'n, defendant-intervenors.

Brendan Stocklin, Enright, DiLorenzo & Dietz, Portland, Or., for Oregonians for Food & Shelter, defendant-intervenors.

## OPINION AND ORDER

JAMES M. BURNS, District Judge.

Plaintiff Paul E. Merrell, a resident of Lincoln County, Oregon, brought this action for injunctive relief to set aside the right-of-way use registrations of seven herbicides issued by the Environmental Protection Agency ("EPA"), or its predecessor, under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, *et seq.* The seven herbicides whose right-of-way use registrations have been challenged here are Garlon 4, Krenite, dicamba, simazine, diuron, bromacil, and Rodeo.[2] Plaintiff, however, has not alleged that EPA registered these pesticides in violation of any provisions of FIFRA. Instead, he alleges that EPA was required to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, before it could properly register the seven specified herbicides and that absent compliance with NEPA, the registrations under FIFRA should be held invalid.

2. Bromacil, dicamba, diuron and simazine were first registered for use in maintaining roadside rights-of-way in 1966, 1967, 1966 and 1958, respectively. These registrations were issued by the United States Department of Agriculture, EPA's predecessor in pesticide regulation. Glyphosate (the active ingredient in Rodeo) and Krenite were first registered for right-of-way use in 1974 and 1975, respectively. Garlon 4 was first registered for right-of-way use in 1980. The latter three pesticides were registered by EPA. *See* affidavit of Douglas D. Campt, Director, Registration Division, Office of Pesticide Programs, EPA, submitted in support of EPA motion for summary judgment, at ¶ 16.

This case is presently before the Court on dispositive motions filed by all parties. Plaintiff has moved for partial summary judgment, relying primarily on the Ninth Circuit's recent ruling in *SOS v. Clark*, 747 F.2d 1240 (9th Cir.1984) ("SOS"), and the doctrine of collateral estoppel. Defendant Ruckelshaus (hereinafter "EPA"), defendant-intervenors Ciba Geigy, *et al.*, and defendant-intervenor Oregonians for Food and Shelter have each filed motions to dismiss or for judgment on the pleadings. Because evidentiary matter is submitted with the dispositive motions of defendant and defendant-intervenors, I treat all as summary judgment motions under Rule 56. See Fed.R.Civ.P. 12(b), (c).

None of the material facts is in dispute. Except as noted herein, factual assertions (which may be in dispute) in the evidentiary materials are not relevant to the legal issue before the Court: whether the FIFRA registration process is subject to the procedural requirements of NEPA. It is uncontested that EPA (and its predecessor) complied with FIFRA, but not with the procedural requirements of NEPA in registering the seven herbicides at issue here. Having considered each of the written motions and oral arguments presented thereon, I find and hold that defendant and defendant-intervenors are entitled to judgment as a matter of law. Accordingly, I grant defendants' motions and deny plaintiff's motion for partial summary judgment.

■ Merit is lacking in plaintiff's contention that EPA is collaterally estopped from litigating the question of whether EPA must comply with NEPA in registering pesticides under FIFRA. The *SOS* decision upon which plaintiff relies does not require EPA to comply with NEPA before it registers herbicides under FIFRA. The Ninth Circuit's statement in *SOS*, that "[t]he EPA registration process for herbicides under FIFRA is inadequate to address environmental concerns under NEPA," 747 F.2d at 1248, is simply not applicable to the issue here. The quoted statement means only that an agency engaged in a program of pesticide use, to which NEPA does apply, cannot rely solely on a FIFRA pesticide registration as a substitute for its own obligation to prepare an impact statement analyzing the environmental impacts of using a certain herbicide in a given location. The Ninth Circuit did not address the issue that is here. Collateral estoppel has no application here. See, *e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

Courts have uniformly refused to apply NEPA requirements to EPA's regulatory responsibilities under any environmental protection statutes which it administers. *E.g., Amoco Oil Co. v. EPA*, 501 F.2d 722, 749 (D.C.Cir.1974); *Portland Cement Association v. Ruckelshaus*, 486 F.2d 375, 384–387 (D.C.Cir.1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974); *Twitty v. North Carolina*, 527 F.Supp. 778, 783 (E.D.N.C.1981), *aff'd without opinion*, 696 F.2d 992 (4th Cir.1982); *Maryland v. Train*, 415 F.Supp. 116, 121–22 (D.Md.1976).[3]

■ In addition, three courts have specifically addressed the question of whether NEPA is applicable to EPA in its regulation of pesticides under FIFRA. *Wyoming v. Hathaway*, 525 F.2d 66, 71–73 (10th Cir. 1975), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976); *EDF v. EPA*, 489 F.2d 1247, 1254–1257 (D.C.Cir.1973);

---

**3.** See also *Essex Chemical Corp. v. Ruckelshaus*, 486 F.2d 427, 430–431 (D.C.Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1305–1306 (10th Cir.1973); *Duquesne Light Co. v. EPA*, 481 F.2d 1, 9 (3rd Cir.1973); *Buckeye Power, Inc. v. EPA*, 481 F.2d 162, 173–174 (6th Cir.1973); *International Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 650, f.n. 130 (D.C. Cir.1973); *Appalachian Power Co. v. EPA*, 477 F.2d 495, 508 (4th. Cir.1973); *Getty Oil Co. (Eastern Operations) v. Ruckelshaus*, 467 F.2d 349, 359 (3d Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973).

Addendum: I granted these motions by means of an oral opinion at the hearing on December 12, 1984; thereafter I was asked to issue a written opinion. This is it, and it adds to, and somewhat clarifies my oral opinion.

*EDF v. Blum*, 458 F.Supp. 650, 661–62 (D.D.C.1978). These courts uniformly have declined to require EPA, under NEPA, to duplicate the environmental analysis already performed under the FIFRA registration process. Furthermore, these courts have found that the FIFRA action at issue was the functional equivalent of a NEPA analysis. Finally, NEPA does not apply to EPA's exercise of regulatory authority "unless Congress specifically has so directed." *Maryland v. Train*, 415 F.Supp. 116, 122 (D.Md.1976). Congress has not so directed with respect to FIFRA.

■ Congress, under FIFRA, established a comprehensive scheme for the registration and regulation of pesticides, the purpose of which is to "protect man and his environment." S.Rep. No. 92–838. 92d Cong., 2d Sess. 1 (1972), U.S.Code Cong. & Admin.News 1972, p. 3993. *See Ruckelshaus v. Monsanto Co.*, — U.S. —, 104 S.Ct. 2862, 2867, 81 L.Ed.2d 815 (1984). FIFRA requires the registration of a pesticide upon a determination, *inter alia*, that it will not cause "unreasonable adverse effects on the environment." 7 U.S.C. §§ 136a(c)(5). EPA, pursuant to the statute, has promulgated exacting scientific testing requirements for the determination of adverse effects. *See* 40 C.F.R. Part 158, published at 49 Fed.Reg. 42856 (1984). The Administrator is required to publish in the Federal Register any application for registration of a new pesticide or a new use pattern which has been filed and any comments received. 7 U.S.C. § 136a(c)(4). Further, 136h(d)(1) provides for the release of health and safety data of registered pesticides, including "information concerning the effects of [a] pesticide on any organism or the behavior of [a] pesticide in the environment, including, but not limited to, data on safety to fish and wildlife, humans, and other mammals, plants, animals, and soil, and studies on persistence, translocation and fate in the environment, and metabolism ..." *See also Monsanto Co.*, 104 S.Ct. at 2880. Finally, an individual who is dissatisfied with the Administrator's decision to register a pesticide may petition the Administrator that it be cancelled or suspended. *See EDF v. EPA*, 489 F.2d at 1247. The failure to suspend or cancel is a decision subject to judicial review. 7 U.S.C. § 136n(a), (b).

■ In accordance with the principles set forth in the cases discussed previously, I find that FIFRA's substantive and procedural provisions for the protection of the environment satisfy the objectives of NEPA, and that Congress simply has not required that EPA superimpose NEPA upon the pesticide registration process. I would emasculate FIFRA if I were to do so.

■ Notwithstanding plaintiff's effort to dress his claims in NEPA clothing this action is governed by FIFRA. The relief which plaintiff seeks in this action is, in effect, the cancellation or suspension of the registrations of the pesticides named in the complaint. FIFRA provides the exclusive mechanism to obtain this relief. The facts alleged, even assuming them to be true and considering them in the light most favorable to the plaintiff, do not show that EPA failed to comply with FIFRA in registering the named pesticides. Therefore, even assuming that I have jurisdiction over this matter, plaintiff is not entitled to prevail.

■ In addition, I find that plaintiff has failed to exhaust his administrative remedies under FIFRA prior to commencing this action for cancellation or suspension of the registrations.

If plaintiff has reason to believe that these pesticides may cause unreasonable adverse effects on the environment, he may petition the Administrator to cancel or suspend their registrations. If the Administrator's decision is adverse, plaintiff may seek judicial review. Merrell has not availed himself of any of these remedies. Instead, less than one week after telephoning EPA to stop the alleged impending spraying action by Lincoln County, he filed this case. I find the limited contacts which Merrell has had with EPA do not constitute the exercise of the administrative remedies available to him under FIFRA. EPA has

not been afforded an opportunity to apply its technical expertise to this matter. *Myers v. Bethlehem Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). Thus I am without jurisdiction to review the validity of the named pesticides.

For the foregoing reasons, the motions of defendant and defendant-intervenors are granted and the case dismissed accordingly. Each party shall bear his or its own costs.

IT IS SO ORDERED.